IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETSUO AKAOSUGI, HIEU NGUYEN, and RINKO DONAHUE, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BENIHANA NATIONAL CORPORATION,<br><br>Defendant. | No. C 11-01272 WHA<br><br>**ORDER RE FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEY'S FEES** |

In this employment class action, the parties jointly seek final approval of a settlement relating to one class of former employees and one class of current employees. Class counsel also move for an order awarding attorney's fees. By order dated August 20, 2012, authorization was given to disseminate notice of the proposed settlement to the classes. A schedule was set for mailing out notice to class members via United States mail and for class members to opt out or object. A final fairness hearing was scheduled and held. No objections were received from any class members. Having considered the settlement agreement, the parties' submissions, and for the reasons stated below, final approval of the settlement is **GRANTED**.

**1.    Legal Standard.**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." FRCP 23(e)(2). Our court of appeals has identified a number of factors that a district court should take into consideration in determining whether to approve a proposed settlement, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of

> discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted). These factors are not exclusive, and some factors may warrant more weight than others depending on the circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As discussed below, the settlement is approved, with the modification that the settlement should only be binding as to class members who presumptively received notice and should exclude those class members for whom the mailed notice was returned as undeliverable or who timely opted out.

### 2. Class Definitions.

By order dated May 10, 2012, a vacation-pay terminated-employee class was certified under Rule 23(b)(3) to pursue claims against defendant Benihana National Corporation ("BNC") for unlawful forfeiture of accrued vacation pay, failure to pay wages on termination, failure to provide accurate itemized wage statements, and unfair business practices (Dkt. No. 154 at 9). By order dated August 20, 2012, a vacation-pay current-employee class was certified for settlement purposes under Rule 23(b)(3) to pursue these same claims against BNC, with the exception of the claim for failure to pay wages on termination (Dkt. No. 180).

### 3. Notice to the Classes.

A claims administrator was engaged to administer and oversee the mailing of the approved notice form to class members via United States mail. Due to an oversight by counsel, some class members were mailed notice packets over one month after the mailing deadline set by the August order. The deadline for objecting or opting out was extended for these class members who were sent late notice (Dkt. Nos. 278 and 279). A total of 273 notice packets were returned as undeliverable after one round of mail. The claims administrator attempted to update the mailing addresses using a commercial public records database. Where updated information was obtained, another attempt at mail delivery was made.

Ultimately, a total of 116 notices were returned to the claims administrator as undeliverable after the second attempt (Butler Decl. ¶¶ 9, 14). At the hearing, counsel clarified

that in fact only 100 class member notices had been returned as undeliverable. Thus, approximately six percent of the 1,623-member class did not receive notice of the proposed settlement. Nor is it likely that these individuals will be located in order to provide them with any settlement fund checks. Under these circumstances, it would be unfair to forever extinguish their rights by binding them to the terms of the release, where it is apparent that they very likely received no notice of their rights under the proposed settlement agreement and will receive no benefit. Accordingly, the 100 individuals should not be bound by the settlement agreement and its release of claims. Of course, defendant BNC should not have to pay for these excluded individuals. Their prospective share of the settlement fund should be removed. BNC has filed a statement indicating that it does not object to excluding these 100 individuals from the settlement, provided that BNC retains their share of the settlement (Dkt. No. 295).

**4.     Benefit to the Classes.**

The key provisions of the settlement agreement are as follows:

*First*, a common settlement fund of $460,000 will be created to compensate class members for vacation pay allegedly forfeited by class members after November 1, 2009.

*Second*, after accounting for payroll taxes and settlement administration costs (estimated at $19,387.00), the remaining settlement fund will be distributed to each class member on a pro rata basis. Specifically, the amount to be paid to each class member is the number of vacation hours the class member potentially forfeited as a percentage of the total number of vacation hours for all class members. The information regarding potentially forfeited vacation pay will be determined based on defendant's records. There is no preferential treatment or additional compensation provided to the class representatives or other class members.

*Third*, there will be no residual reversion to defendant. Any unclaimed funds will be pooled and distributed to a *cy pres* beneficiary. The parties proposed that any unclaimed funds be donated to the Lawyers' Committee for Civil Rights of Northern California or be allowed to escheat to the State of California Controller's Office's unclaimed property fund.

*Fourth*, class members who do not opt out of the settlement will be bound by the release. The release covers vacation pay claims of any type during the period in question, as well as

3

claims for unfair business practices, penalties, damages, interest, and attorney's fees and costs that are related to such vacation pay claims. Class members do not release any other claims against defendant, such as claims for overtime wages, meal and rest period violations, or claims arising after the date of preliminary approval, August 20, 2012.

*Fifth*, class counsel Minami Tamaki, LLP, and Lewis, Feinberg, Lee, Renaker, & Jackson, P.C., have sought an award for attorneys' fees and costs incurred in litigating the vacation pay class claims. The parties agreed that defendant would not oppose an application for fees and costs up to $200,000. Class counsel filed a motion for attorney's fees and costs on August 3, 2012, requesting an award of $200,000 (Dkt. No. 172).

Class counsel state that the gross settlement fund is nearly equal to the amount plaintiffs could have recovered at trial on their vacation pay claims, including the employer's share of payroll tax and statutory interest. This does not, however, include any amount of potential recovery for the terminated employees class' claim for waiting time penalties. As discussed at the hearing on the motion for preliminary approval of the settlement, defendant argued that it would be difficult to obtain recovery on this claim because defendant had a good-faith defense that the vacation pay funds were part of a Voluntary Employee Benefit Association account under ERISA (Dkt. No. 177). For this same reason, recovery on plaintiffs' claim for allegedly forfeited vacation pay is not certain. If defendant's ERISA defense and preemption argument were accepted, it could establish a complete bar to recovery. This uncertainty, as well as the high amount of recovery, weighs in favor of approval.

### 5. Additional Factors.

No class members objected to the settlement agreement. Three class members elected to opt out (Nako Decl. ¶ 8). This weighs in favor of approval.

The settlement agreement was reached after the parties had litigated this action extensively, including filing and briefing motions regarding class certification, a motion for partial summary judgment, and discovery motions. The parties represented that they engaged in extensive discovery, including serving discovery requests resulting in nearly 22,000 pages of document production and taking eighteen depositions (Dkt. No. 287 at 8). The settlement

4

agreement was reached after two full-day settlement conferences and several weeks of additional negotiation overseen by Magistrate Judge Joseph Spero. This litigation was hard-fought by competent counsel and the settlement agreement was likely the result of good-faith negotiations at arm's length, and was "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

Based on the foregoing, the settlement agreement is **APPROVED**.

### 6. Attorney's Fees and Costs.

This action involved the claims for vacation pay that are the subject of the settlement agreement as well as claims for overtime wages and meal-and-rest-break benefits that were not certified to proceed on a class basis. Class counsel Minami Tamaki, LLP, and Lewis, Feinberg, Renaker, & Jackson, P.C., have filed a motion for attorney's fees and costs that is limited to the $200,000 cap agreed upon by the parties. Counsel represent that recovery for attorney's fees and costs was not discussed until after the terms of the class action settlement were finalized (Nako Decl. ¶ 16).

It appears that Lewis Feinberg generally focused on the vacation-pay claims, while Minami Tamaki worked primarily on the non-certified overtime and meal-and-rest-break claims (Nako Decl. ¶ 18; Allen Decl. ¶¶ 7, 20). Minami Tamaki also conducted the initial investigation of the lawsuit, worked closely with the named plaintiffs, and worked on motions and briefing relevant to both the vacation-pay classes and the non-certified claims (*ibid.*). According to counsel's declarations and attached summaries, as well as the detailed time-keeper records submitted to the Court, counsel seek fees and costs only for work performed on the vacation-pay claims and related ERISA preemption defense. Counsel have discounted or omitted from their fee application projects that could not be attributed to those issues.

Plaintiffs' motion correctly states that California law governs the award of attorney's fees in this action. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under both Ninth Circuit and California law, courts have discretion to use the lodestar method in awarding attorney's fees. *Hanlon*, 150 F.3d at 1029; *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001). Once the lodestar has been calculated by multiplying the number of hours worked

by a reasonable rate, courts have discretion to adjust the award "upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029 (citations omitted). Our court of appeals has held that, in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). The judge is obligated to ensure that any fee award is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003).

In this action, the total fees sought by plaintiffs are "fair and reasonable" because counsel exercised reasonable billing discretion in reducing the number of billable hours spent litigating this case. Counsel then further reduced the amount sought to a reasonable limit that defendant had agreed not to oppose. Counsel calculated that the lodestar and costs combined was $327,853.39. This order finds that the $200,000 requested is reasonable, given the amount of work counsel did in this case and the good result obtained for the class.

The award of attorney's fees and costs will come directly from defendant as opposed to from a common settlement fund. Therefore, the amount of attorney's fees awarded will have no impact on the recovery available to class members. The Court finds that the award of $200,000 in fees and costs is reasonable and fair.

## CONCLUSION

For the foregoing reasons, final approval of the settlement agreement is **GRANTED** and the settlement is **APPROVED**. Pursuant to paragraphs 43–45 of the settlement agreement, all claims asserted in this action are **DISMISSED** as to the class members participating in this settlement. As discussed above, class members who opted out or whose mailed notice packets were returned as undeliverable after multiple attempts should not be considered as participating in the settlement. Defendant BNC may reduce the amount of the settlement fund to account for the exclusion of these individuals' potential claims. **BY FEBRUARY 8, 2013**, counsel shall jointly file a final list of those class members bound by the settlement, who are enjoined from bringing, joining, or continuing to prosecute any action asserting the released claims and a separate list of

all excluded from the classes, including those for whom notice was undeliverable. Jurisdiction over matters relating to the interpretation, implementation, effectuation, and enforcement of the settlement **SHALL BE RETAINED FOR A PERIOD OF FOUR YEARS** from the date of this order. Counsel are awarded fees and expenses in the **AMOUNT OF $200,000**, with half to be paid now and half to be withheld until all the work is complete. The administration costs incurred by the claims administrator shall be awarded from the settlement fund, as set forth in the settlement agreement. Any remaining funds not distributed to class members should go to the Lawyer's Committee for Civil Rights of Northern California as *cy pres* beneficiary. Counsel should file a stipulated form of judgment by **JANUARY 31**.

**IT IS SO ORDERED.**

Dated: January 24, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7